IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FATIMA ZAGNOON
and M.K.,

                         Plaintiffs,                          OPINION AND ORDER

         v.                                                       23-cv-629-wmc

ANTONY BLINKEN
and ALISON DILWORTH,

                    Defendants.

Plaintiff Fatima Zagnoon is a United States and Syrian dual citizen, who has been trying for about a decade to sponsor her minor children for U.S. citizenship, including her eldest son, plaintiff M.K., a Syrian national.  Plaintiffs seek injunctive relief under the Mandamus Act, 28 U.S.C. § 1361, and Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), requiring defendants to end administrative processing and enter final adjudication of M.K.'s visa before he turns 18 on November 11, 2023, and loses an opportunity to acquire automatic U.S. citizenship under the Child Citizenship Act ("CCA") Immigration and Nationality Act ("INA") § 320(a), 8 U.S.C. § 1431(a).[1]  The court held a hearing on plaintiffs' temporary restraining order motion on October 27, 2023, which was denied without prejudice to their still obtaining a preliminary injunction pending the submission of evidentiary and additional legal support.

---

[1] The Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631, (Pls.' Ex. B (dkt. #1-2) 2), provides for automatic citizenship for a child born outside the United States if: (1) at least one parent is a U.S. citizen; (2) the child is under 18 years old; and (3) the child is residing in the U.S. with the citizen parent under lawful admission for permanent residence.  INA § 320(a), 8 U.S.C. § 1431(a).

The plaintiffs have now filed supplemental briefing and declarations as ordered by the court, to which defendants responded.  (Dkt. ##10-13.)  Setting aside the question as to whether the Western District of Wisconsin is the proper venue for an action against the Deputy Chief of Mission at the U.S. Embassy in Riyadh, Saudi Arabia, which defendants have not disputed, the principal legal issues appear to be:  (1) whether a federal district court's review of defendants' denial of M.K.'s visa application after an interview under INA § 221(g), 8 U.S.C. § 1201(g), is barred by the doctrine of consular nonreviewability; and (2) if not, whether the delay in defendants' subsequent administrative processing and final adjudication was unreasonable.  Assuming this court could review the initial denial of M.K.'s application, the court finds that the further delay was not unreasonable, and thus, plaintiffs' motion for a preliminary injunction must be denied.

## BACKGROUND

M.K.'s visa application process began in December 2021, when Zagnoon filed Form I-130 family petition for her children.  (Lotfi Decl. (dkt. # 11) ¶ 6.)  About one year later, in December 2022, U.S. Citizenship and Immigration Services, approved M.K.'s petition (*id.*), and given his 18th birthday was less than a year away, the U.S. Embassy expedited the case a few days later, under the CCA.  By February 2023, Zagnoon's counsel had also submitted all of the required application documents (Lotfi Decl. (dkt. #11) ¶ 7), and M.K. was scheduled for his visa interview on August 30.  Unfortunately, at that time, a consular officer denied M.K.'s visa application under INA § 221(g) and submitted his case for "administrative processing."  (Dkt. #8-1, at 2; Zagnoon Decl. (dkt. #12) ¶ 14.)  On September 6, Zagnoon submitted form DS-5535, which contained supplemental questions

for visa applicants, and on October 24, the U.S. Consulate in Riyadh explained that additional screening was being conducted, which "[d]epending on the ... results, [may cause] a consular officer [to] reconsider [M.K.'s] eligibility for the visa." (Dkt. # 8-1, at 2.)

OPINION

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original and quotation marks omitted)). "To win a preliminary injunction, a party must show that [she] is reasonably likely to succeed on the merits, [she] is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

To date, plaintiffs have still not shown that this lawsuit is reasonably likely to succeed on the merits. Even if the consular nonreviewability doctrine, which generally "bars judicial review of visa decisions made by consular officials abroad," *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019) (quotation marks omitted), does not apply, plaintiffs have not shown that the short delay in processing M.K.'s visa application after his interview and § 221(g) denial was "so egregious as to warrant a preliminary injunction." *See Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (explaining that the standards for obtaining relief under the Mandamus Act and APA are "essentially the same," making "[t]he central question in evaluating a claim of unreasonable delay is

3

whether the agency's delay is so egregious as to warrant mandamus.") (quotation marks omitted)).

The Court of Appeals for the D.C. Circuit has set forth six factors (the so-called "*TRAC* factors") for determining whether a delay in agency action is unreasonable:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) (quotation marks and citations omitted).

Beginning with the first *TRAC* factor -- the rule of reason -- the current, 58-day delay in conducting further administrative processing of M.K.'s visa denial is actually drastically short of what other courts have considered an unreasonable delay in immigration cases. *See Sarlak v. Pompeo*, No. CV 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases) (immigration delays of *five to seven years are generally unreasonable* while delays between *three to five years are often not unreasonable*).  In fairness, under factors two and three, plaintiffs claim to have "relied on [an e-mail from the National Visa Center ("NVC")] to conclude that M.K. would not lose his opportunity to acquire U.S. citizenship through his mother," (dkt. #10, at 2), but that e-mail promised nothing

more than an expedited interview appointment, which M.K. ultimately received, not any
specific outcome of his visa application itself.

> When a principal applicant appears to qualify for benefits under the Child
> Citizenship Act of 2000 (CCA), the [NVC] automatically expedites the case
> 120 days before the applicant turns 18. NVC will automatically transfer the
> petition to the designated U.S. Embassy or Consulate to schedule an
> appointment for you.

(Defs.' Ex. A (dkt. #10-1) at 2.)  Further, plaintiffs were aware that this e-mail did not
even *guarantee* a timely interview, as plaintiffs continued to ask the NVC to expedite M.K.'s
application after receiving the above e-mail.  (*See* Lotfi Decl. (dkt. #11) ¶ 8.)  Regardless,
the NVC *did* expedite M.K.'s visa appointment, as it interviewed him about 7 months after
his documentation was complete, despite there being an undisputed 275,506-person
backlog of visa applicants waiting for an interview as of September 2023.  *National Visa
Center (NVC) Immigrant Visa Backlog Report - September 2023*, U.S. Department of State,
https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-
backlog.html, (last visited Nov. 2, 2023).

Plaintiffs also concede that there is no case law finding such a short delay
unreasonable, and as the government points out, the case they offer as an analogy, *Gomez
v. Trump*, 485 F. Supp. 3d 145, 196 (D.D.C.), is readily distinguishable.  Indeed, *Gomez*
concerns "diversity" immigrant visas, and a person selected for a diversity visa is only
eligible to receive the visa through the end of the fiscal year, full stop.  *Id.* at 159, 196 ("the
INA provides a clear indication of the speed with which it expects the agency to proceed
in processing diversity lottery selectees' visa applications" (quotation marks omitted)).
There is no such time frame for issuance of a visa to M.K., since he can continue to apply

into the future.  Even under the Child Citizenship Act; the only time limit is that the child must be under 18 years old, INA § 320(a), 8 U.S.C. § 1431(a), and while M.K. is likely to now miss that window, plaintiffs appear to be at least partially responsible for the current time crunch, as they admit that Zagnoon has had a decade to pass citizenship to M.K., but she only began the visa application process in 2021 for unexplained reasons, and even then appears to have continued to remain outside the U.S., despite knowing that the third requirement under the CCA would be proof of the child residing in the U.S. with a citizen parent, apparently because of inconvenient timing for school purposes. (Zagnoon Decl. ¶ 17.)

Also, as to the second *TRAC* factor, "there is no statutorily mandated timeline [for the U.S. Department of State] to process Plaintiffs' family preference immigrant visa application."  *See Poursohi v. Blinken*, No. 21-CV-01960, 2021 WL 5331446, at *7 (N.D. Cal. Nov. 16, 2021); *see also Tekle v. Blinken*, No. 21-CV-1655, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) ("Congress did not provide a statutory deadline to complete processing or adjudication of visa applications.").  Further, while plaintiff relies on a reference from the Department of State's Foreign Affairs Manual, the government correctly points out that manual does not have force of law because it was not issued pursuant to notice-and-comment rulemaking, *Poursohi*, 2021 WL 5331446, at *8, and the timeframe it sets forth is "aspirational, not mandatory."  9 Foreign Affairs Manual 504.7-2(b) (July 21, 2020), https://fam.state.gov/FAM/09FAM/09FAM050407.html ("The Department *expects all posts to strive* to meet the 30/60-day requirements." (emphasis added)).

Certainly, *TRAC* factors three and five weigh in plaintiffs' favor given that M.K.'s welfare and health is at stake because he could be forced to return to war-torn Syria. (Zagnoon Decl. (dkt. # 12) ¶¶ 11-12.)  However, again, unlike in *Gomez*, M.K.'s visa application does not expire on his 18th birthday, and even if he misses out on the Child Citizenship Act deadline, he could still receive a visa and seek full naturalization later.  *See* INA § 316, 8 U.S.C. § 1472 (explaining naturalization requirements).

As for the Fourth *TRAC* factor, the effect of expediting delayed action on other agency activities, also weighs against plaintiffs.  Importantly, the Department of State has already expedited M.K.'s visa application because of his impending 18th birthday, providing him an interview with the Department of State.  Although there is no data about the queue of people waiting to complete administrative processing, the Department of State's website shows that there is generally a significant immigrant visa backlog, with more than 273,000 applicants waiting for an interview as of October 2023.  *National Visa Center (NVC) Immigrant Visa Backlog Report*, U.S. Department of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html, (last visited Nov. 1, 2023).  Given the backlog in visa processing, granting relief to plaintiffs would likely "reorder a queue" of visa applicants in administrative processing who also all want final adjudication, making the grant of extraordinary relief on this record seem inappropriate.  *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021).

Finally, as to the sixth *TRAC* factor, plaintiffs appear to assert that the defendants wanted to prevent M.K. from acquiring U.S. citizenship.  However, plaintiffs only offer

7

vague and unsupported assertions, and a short timeline, which are not enough to show impropriety.

In sum, the court acknowledges that plaintiffs have an important interest in M.K. acquiring U.S. citizenship under *TRAC* factors three and five, but the very short, days-long delay, lack of a congressionally mandated visa-processing timeframe, as well as the fact that M.K.'s application has already been expedited and expediting his case further could come at the expense of other, similarly-situated immigrants under *TRAC* factors one, two and five, outweigh that interest. Thus, because plaintiffs have not shown any likelihood of proving unreasonable delay, they have not met their burden for preliminary relief.

ORDER

IT IS ORDERED that plaintiffs' motion for a preliminary injunction (dkt. #6) is DENIED.

Entered this 3rd day of November, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge